UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21515-CIV-ALTONAGA/Simonton

**WILLIAM SEALE**, *et al.*,

    Plaintiffs,

vs.

**OCEAN REEF CLUB, INC.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Ocean Reef Community Association's ("ORCA['s]") Motion to Dismiss the Amended Complaint . . . ("ORCA Motion") [ECF No. 31], filed June 11, 2013; and Defendant Taylor Clark's ("Clark['s]") Motion to Dismiss Amended Complaint or for a More Definite Statement . . . ("Clark Motion") [ECF No. 38], filed June 26, 2013.[1]  Plaintiffs filed a Response to the ORCA Motion ("ORCA Response") [ECF No. 41] on June 28, 2013, to which ORCA replied ("Reply") [ECF No. 42] on July 8, 2013.  Plaintiffs additionally filed a Response to the Clark Motion ("Clark Response") [ECF No. 43] on July 15, 2013, but Clark filed no reply memorandum.  The undersigned has carefully considered the parties' written submissions and applicable law.

---

[1]  The remaining Defendant, Ocean Reef Club, Inc. ("Ocean Reef"), has not moved to dismiss.  Ocean Reef filed its Answer and Affirmative Defenses to the Amended Complaint [ECF No. 32] on June 11, 2013.

## I. BACKGROUND[2]

This case involves various claims in connection with a golf cart accident resulting in injuries to Plaintiff, Williams Seale ("Seale"). Plaintiffs, Seale and his wife Marguerite E. Pelissier ("Pelissier"), are residents of Annapolis, Maryland and own property in Monroe County, Florida. (*See* Am. Compl. ¶ 1). Defendant Ocean Reef — a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Key Largo, Florida — owns the property where the accident occurred. (*See id.* ¶ 2). Defendant ORCA is a not for profit corporation organized and existing under the laws of the State of Florida, with its principal place of business in Key Largo, Florida. (*See id.* ¶ 3). ORCA issues licenses granting authorization to operate golf carts within the property owned by Ocean Reef. (*See id.*). Defendant Clark is a resident of Rumson, New Jersey, and also owns property in Ocean Reef, Key Largo, Florida. (*See id.* ¶ 4).

On Ocean Reef's property, bicyclists and pedestrians have to share the same "pathway" with golf carts as there is no separate bicycle or pedestrian path along the roadway. (*Id.* ¶ 13). On January 1, 2011, Seale — a member and homeowner at Ocean Reef — was lawfully riding his bicycle on Ocean Reef's property. (*See id.* ¶¶ 10–11). While Seale was cycling, Clark's twelve-year-old daughter was operating a golf cart owned by Ocean Reef, which Ocean Reef had loaned to Clark, on the same property. (*See id.* ¶¶ 12, 14, 15). ORCA had issued Clark's daughter a license to operate a golf cart alone within the property owned by Ocean Reef. (*See id.* ¶ 16).

On January 1, 2011, Clark's daughter operated the golf cart in an "unqualified, careless fashion," by failing to "look at the road in front of her sufficiently," "utilize appropriate speeds,"

---

[2] The facts are taken from the Amended Complaint [ECF No. 29], are presented in the light most favorable to Plaintiffs, and are taken as true.

"brake appropriately," or "watch with deliberateness for pedestrians and bicyclists," which resulted in a collision with Seale. (*Id.* ¶ 18). Seale suffered "severe personal injury." (*Id.*). As a result, Plaintiffs filed the Complaint [ECF No. 1] on April 29, 2013, and subsequently the Amended Complaint.

In the Amended Complaint, Seale alleges the following claims: vicarious liability against Ocean Reef (count I) (*see* Am. Compl. ¶¶ 19–24); negligence against Ocean Reef (count II) (*see id.* ¶¶ 25–29); negligent entrustment against ORCA (count III) (*see id.* ¶¶ 30–37); negligence against ORCA (count IV) (*see id.* ¶¶ 38–43); and negligent entrustment against Clark (count V) (*see id.* ¶¶ 44–51). Pelissier asserts a loss of consortium claim against all Defendants (count VI). (*See id.* ¶¶ 52–53). Clark and ORCA presently move to dismiss the Amended Complaint.

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to

dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "Motions for more definite statement are disfavored under the liberal notice pleading approach in the Federal Rules of Civil Procedure; rather, discovery is the correct vehicle to obtain information necessary for trial." *In re Reliance Fin. & Inv. Grp., Inc.*, No. 05-80625-civ-RYSKAMP/Vitunac, 2006 WL 3663243, at *6 (S.D. Fla. Nov. 14, 2006) (citation omitted). "The motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." *Id.* (citations and internal quotation marks omitted). "Indeed, a motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Id.* (alteration, citation, and internal quotation marks omitted).

### III. ANALYSIS

ORCA moves to dismiss the negligent entrustment and negligence claims — in counts III and IV of the Amended Complaint, respectively — against it. (*See generally* ORCA Mot.). Clark moves to dismiss the negligent entrustment claim against him in count V of the Amended Complaint. (*See generally* Clark Mot.). Clark also moves for a more definite statement. (*See generally id.*). The Court addresses the negligence claim against ORCA, before turning to the

negligent entrustment claims against ORCA and Clark.  The Court then addresses the motion for a more definite statement.

### A. Negligence Claim Against ORCA

ORCA asserts Seale fails to state a claim for negligence upon which relief can be granted in count IV.  (*See* ORCA Mot. 6).  ORCA specifically contends, "[s]ince ORCA did not own, lease or control the golf cart involved in the accident, the Plaintiffs cannot sue ORCA under any legal theory."  (*Id.*).  In response, Seale asserts the negligence claim relates to the issuance of the license, which renders ownership of the golf cart irrelevant.  (*See* ORCA Resp. 10).

The elements of a negligence action in Florida are: "(1) a legal duty [owed by] the defendant towards the plaintiff under the circumstances; (2) a breach of that duty by the defendant; (3) the defendant's breach of duty was both the actual and proximate cause of the plaintiff's injuries; and (4) . . . damages as a result of the breach." *Pinchinat v. Graco Children's Prods., Inc.*, 390 F. Supp. 2d 1141, 1149 (M.D. Fla. 2005) (citations omitted); *see also Sorel v. Koonce*, 53 So. 3d 1225, 1227 (Fla. 1st DCA 2011).[3]  "[T]he question of foreseeability can be relevant both to the element of duty . . . and the element of proximate causation . . . ." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  "Where a defendant's conduct creates a *foreseeable zone of risk*, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses."  *Id.* at 503 (emphasis in original; citations omitted).  Put differently, in order "to bring a common law action for negligence in Florida, the 'minimal threshold *legal* requirement for opening the courthouse doors' is a finding that a defendant's alleged actions created a foreseeable 'zone of risk' of harming others." *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1202

---

[3] "Since this is a diversity case, the applicable substantive law is Florida law." *Brewer v. Stop Stick, Ltd.*, No. 2:04-cv-613FtM33DNF, 2005 WL 2614537, at *2 (M.D. Fla. Oct. 14, 2005).

(Fla. 1997) (emphasis in original; citation omitted) (quoting *McCain*, 593 So. 2d at 502). The existence of a duty is a question of law. *See McCain*, 593 So. 2d at 502.

Foreseeability is also central to the question of proximate causation, a *factual* question "concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created." *Id.* at 503. Proximate cause is established where "prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *Id.* "[I]t is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its *exact* extent." *Id.* (emphasis in original; citation omitted). "[T]he true extent of the liability would remain questions for the jury to decide." *Id.* Moreover, "[t]he law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience," "even where the injury may have arisen from a zone of risk." *Id.*

In the present case, Clark's twelve-year-old daughter was issued a license by ORCA to operate a golf cart on Ocean Reef's property. (*See* Am. Compl. ¶ 16). Clark's daughter operated the golf cart in an "unqualified, careless fashion" resulting in a collision which caused "severe personal injury" to Seale. (*Id.* ¶ 18). For almost thirty years, Florida has recognized golf carts as dangerous instrumentalities having the capability of causing death or destruction. *See Meister v. Fisher*, 462 So. 2d 1071, 1073 (Fla. 1984) ("[A] golf cart when negligently operated on a golf course, has the same ability to cause serious injury as does any motor vehicle operated on a public highway."). Moreover, "[a] golf cart may not be operated on public roads or streets by any person under the age of 14." FLA. STAT. § 316.212(7).

With these two determinations — that the operation of golf carts generally, and specifically the operation of golf carts by children under the age of fourteen, carry certain

Case 1:13-cv-21515-CMA   Document 51   Entered on FLSD Docket 08/29/2013   Page 7 of 17

Case No. 13-21515-CIV-ALTONAGA/Simonton

inherent risks — in mind, and construing the Amended Complaint in the light most favorable to Seale, *see Brooks*, 116 F.3d at 1369, the undersigned finds ORCA's act of issuing a license to a twelve-year-old child created a foreseeable zone of risk giving rise to a duty owed by ORCA to Seale (as an inhabitant of the property ORCA manages, at least in part).  It was within the foreseeable zone of risk that an untrained minor might operate a golf cart incompetently and injure a third-party.  As such, ORCA had a legal duty to either "lessen the risk or see that sufficient precautions [were] taken to protect others from the harm that the risk pose[d]." *McCain*, 593 So. 2d at 503 (citations omitted).  Seale alleges ORCA failed to "exercise reasonable care" in licensing drivers such as Clark's daughter who were "without the reasonable qualifications, training, instruction, screening, or supervision."  (Am. Compl. ¶ 41). Additionally, ORCA failed to "adequately supervise and/or instruct individuals" it knew would be operating golf carts, and failed to exercise reasonable care "by authorizing individuals, including minors, who were inexperienced drivers, to operate golf carts alone" on roadways and paths shared by pedestrians and bicyclists. (*Id.*).  Accepting the factual allegations as true, *see Brooks*, 116 F.3d at 1369, ORCA failed to lessen the risk of harm or institute sufficient precautions and thus breached its legal duty.

Next, ORCA's breach of duty was an actual and proximate cause of Seale's injuries.  The present incident was not a freak injury that was utterly unpredictable in light of common human experience. *See McCain*, 593 So. 2d at 503.  Instead, prudent human foresight would lead one to expect that physical injuries are likely to result from the unsupervised operation of a golf cart by a twelve-year-old child. *See id.*  Finally, the allegations in the Amended Complaint establish Seale suffered damages as a result of the breach and collision, including damages for bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life,

expense of hospitalization, medical and nursing care, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. (*See* Am. Compl. ¶ 43). Consequently, Seale sufficiently states a claim for negligence against ORCA.

ORCA nevertheless contends "[Seale] cannot sue ORCA under any legal theory" because ORCA did not own or lease the golf cart at issue. (ORCA Mot. 6). Despite ORCA's recurrent insistence that it did not own the golf cart, ownership is immaterial to Seale's negligence claim. The negligence claim against ORCA asserts ORCA was negligent in issuing Clark's twelve-year-old daughter a license, not in providing a golf cart to Clark's daughter. ORCA further argues to impose a duty in this case would make ORCA "responsible in perpetuity for the actions to anyone to whom it issues a golf cart license." (*Id.*). ORCA again misinterprets the negligence claim. Seale does not contend ORCA should be responsible for all of the actions of any driver in possession of an ORCA-issued golf cart license, but rather that ORCA was negligent in issuing the license itself. Stated differently, Seale maintains the guidelines for issuing licenses, and the manner in which they are granted, did not lessen the risk or employ sufficient precautions to protect others from the harm that the foreseeable risk posed. Seale does not maintain ORCA retains vicarious liability over any license it ever issues.

ORCA also insists there is no legal duty to adequately qualify, train, instruct, screen, or otherwise supervise individuals granted golf car licenses. (*See id.* 7). Yet, "[i]t is well settled that if a legal duty exists, a defendant must exercise reasonable care under the circumstances[,] . . . . [and] whether a defendant exercised reasonable care under a given set of facts is generally an issue for the jury to decide." *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 556–57 (Fla. 4th DCA 2008) (citations omitted); *see also Johnson ex rel. Johnson v. Badger Acquisition Of Tampa LLC*, 983 So. 2d 1175, 1180 (Fla. 2d DCA 2008) ("While breach, causation, and

damages are typically questions for the finder of fact, the determination of duty is a matter of law." (citations omitted)). Having found a legal duty exists in the present claim, a jury will determine whether adequately qualifying, training, instructing, screening, or otherwise supervising individuals granted golf car licenses constitutes reasonable care under the circumstances. The duty imposed is no different than in any negligence action — reasonable care under the circumstances. And any suggestion of an improperly enhanced legal duty is unavailing.

ORCA additionally relies on *Scott v. Hertz Corp.*, 722 So. 2d 231 (Fla. 2d DCA 1998), to argue Seale cannot state a claim for negligence where ORCA complied with existing laws. (*See* ORCA Mot. 7–8). In *Scott*, a short, *per curiam* opinion, the court held the plaintiff failed to state a cause of action and affirmed the denial of the plaintiff's motion for leave to amend the complaint. *See* 722 So. 2d at 231. The court noted, "[i]f a 16-year-old can lawfully drive a car, a person may entrust a car to a driver who is that age or older without being negligent. Without more, an allegation that a person entrusted a car to a person who is under 25 cannot state a claim for negligent entrustment." *Id.* (alteration, citation, and internal quotation marks omitted). Relying on *Scott*, ORCA asserts "[Seale] fails to cite any statute or rule that makes it unlawful for a minor to operate a golf cart. Accordingly, without more, [Seale] cannot state a cause of action." (ORCA Mot. 8). ORCA maintains the law prohibiting the operation of a golf cart on public roads by any person under the age of fourteen does not apply on private property and is thus inapplicable. (*See* Reply 8–9). ORCA's arguments are not persuasive.

First, the *Scott* case addresses a negligent entrustment claim, which involves different elements and is distinguishable from the present case. Also, the court intimated a viable claim would remain if the driver had been under sixteen years of age — the legal driving age in

9

Florida. Here, ORCA authorized Clark's daughter to use a golf cart at the age of twelve, in contravention of the statutory driving age of fourteen for the operation of golf carts on public roads. As the allegedly negligent driver in *Scott* was at least sixteen — the legal driving age — the statute in *Scott* provided no evidence of negligence or negligent entrustment and the result of the case is inapplicable. Although the existence of a rule or statute is not required to state a claim for negligence, *cf. Fina v. Hennarichs*, 19 So. 3d 1081, 1084 (Fla. 4th DCA 2009) ("The fact that Florida law does not prohibit children from operating [all-terrain vehicle]s does not render a child's lack of age irrelevant in determining whether a parent has negligently entrusted an [all-terrain vehicle] to his or her child."), the legal driving age for the operation of a golf cart on public roads is relevant as evidence of negligence here, *see Johnson*, 983 So. 2d at 1182 ("[T]he violation of a statute may be evidence of negligence, but such evidence only becomes relevant to a breach of a standard of care after the law has imposed a duty of care." (citation omitted)).

Further, the distinction drawn by ORCA between public and private roads has more to do with the reach of the statute than its import in the present case. This public-private distinction has previously been rejected by the Florida Supreme Court in the context of whether a golf cart remains a dangerous instrumentality when driven on private roads. *See Meister*, 462 So. 2d at 1073 ("Similarly, a golf cart when negligently operated on a golf course, has the same ability to cause serious injury as does any motor vehicle operated on a public highway."). Although addressed in a different context, the application is instructive. The dangers of permitting a twelve-year-old child to operate a golf cart are not altered or alleviated once on private property. Because Clark's daughter operated the golf cart in contravention of the legal age (even if not

technically in violation of the law), Seale properly relies on the statute as evidence of negligence. Accordingly, Seale sufficiently states a claim for negligence against ORCA.

### B. Negligent Entrustment Claims Against ORCA and Clark

ORCA and Clark move to dismiss the negligent entrustment claims asserted against them in counts III and V, respectively. (*See generally* ORCA Mot; Clark Mot.). ORCA contends it did not own the golf cart or entrust the golf cart to Clark's daughter, and thus cannot be liable under Florida's dangerous instrumentality doctrine. (*See* ORCA Mot. 3–4). Clark asserts he is not liable under the dangerous instrumentality doctrine because he was not the owner of the golf cart and only the owner may be held liable. (*See* Clark Mot. ¶ 3). In response to ORCA's argument, Seale contends a claim for negligent entrustment of a dangerous instrumentality does not require ownership of the dangerous instrumentality. (*See* ORCA Resp. 6). Seale advances a similar argument in response to Clark's Motion. (*See* Clark Resp. 5–6).

The law of negligent entrustment sets out the following standard of care:

> "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

*Kitchen*, 697 So. 2d at 1202 (quoting Restatement (Second) of Torts § 390). "[F]oreseeability of harm, rather than ownership, determine[s] whether an action exist[s] for negligent entrustment." *Id.* at 1205 (citation omitted). Put differently, "liability is not predicated upon ownership of the [item entrusted to another] but rather upon whether the harm was or should have been foreseeable by the person entrusting or delivering the [the item] to another." *Williams v. Bumpass*, 568 So. 2d 979, 981 (Fla. 5th DCA 1990). However, the defendants in a negligent entrustment action must be legally entitled to refuse the active tortfeasor's demand for the item

before being subjected to liability. *See Weber ex rel. Weber v. Marino Parking Sys., Inc.*, 100 So. 3d 729, 731 (Fla. 2d DCA 2012) (holding a valet service had no duty, as an element of negligent entrustment, to refrain from returning a vehicle to its intoxicated owner since valet service had no right of possession to the vehicle).

### 1. ORCA

Seale fails to sufficiently state a cause of action for negligent entrustment against ORCA. In the Amended Complaint, ORCA is described as "a not for profit corporation . . . . [which] issued driver's licenses to minors, providing them with authorization to operate golf carts within and on the property." (Am. Compl. ¶ 3). Seale alleges, "ORCA, as a bailor and licensor for use of a dangerous instrumentality, owed duties of reasonable care" to him. (*Id.* ¶ 33). However, there is no indication ORCA supplied the golf cart to Clark or his daughter, either directly or through a third person. *See Kitchen*, 697 So. 2d at 1202. And while ownership is not necessarily required to state a claim for negligent entrustment, ORCA must have been legally entitled to refuse Seale's request for the golf cart in order to incur liability. *See Weber*, 100 So. 3d at 731. Here, ORCA only supplied the license, not the golf cart itself. (*See* Am. Compl. ¶¶ 33–34). ORCA did not actually entrust the golf cart to anyone, but rather Ocean Reef entrusted it to Clark and Clark entrusted it to his daughter. (*See id.* ¶ 14). Seale provides no authority upholding a negligent entrustment claim where the defendant never actually supplied or delivered the item to the active tortfeasor.

Seale insists he has sufficiently pleaded a negligent entrustment claim against ORCA and principally relies on *Fina*, 19 So. 3d 1081, and *Williams*, 568 So. 2d 979. (*See* ORCA Resp. 6–7). Seale maintains he must only "set forth facts showing the defendant's role in providing some level of permission" to sufficiently state a claim of negligent entrustment. (*Id.* 7). In *Fina*, a

thirteen-year-old girl was involved in a fatal all-terrain vehicle ("ATV") accident. *See* 19 So. 3d at 1082. The victim's father brought suit against two parents who owned the ATV, and the parents' son who allowed the victim to drive the ATV. *See id.* The court recognized a viable negligent entrustment claim against the parents for failing to exercise reasonable care by entrusting the ATV to the son, and against the son for failing to exercise reasonable care by entrusting the ATV to the victim. *See id.* at 1085.

*Williams* involved a physical altercation between two individuals when a third party, Williams, acquiesced to one individual's request for the individual's gun and retrieved it. *See* 568 So. 2d at 980. The one individual shot the other after receiving his gun from Williams. *See id.* The shooting victim brought suit against the shooter and Williams. *See id.* at 981. The shooting victim asserted a claim for negligent entrustment against Williams, and obtained a jury verdict in the victim's favor. *See id.* On appeal, the court upheld the verdict and found it was clearly foreseeable after Williams handed the gun to the shooter that he would fire it at the shooting victim. *See id.* at 981–82.

In both *Fina* and *Williams* the defendants entrusted the actual harm-causing chattel to the eventual active tortfeasor or to the under-aged victim — in *Williams* the gun, and in *Fina* the ATV. All of the defendants fit within the definition of negligent entrustment as people who delivered the chattel. *See Kitchen*, 697 So. 2d at 1202. Moreover, the defendants were legally entitled to refuse delivery of the items. *See Weber*, 100 So. 3d at 731. In the present case, ORCA did not deliver the golf cart to Clark's daughter or to any party involved. Ocean Reef entrusted the golf cart to Clark, and Clark entrusted it to his daughter. Accordingly, Seale cannot maintain the negligent entrustment claim against ORCA asserted in count III.

*2. Clark*

Conversely, Seale sufficiently states a claim for negligent entrustment against Clark. Seale alleges the golf cart "had been loaned to Defendant [] Clark" and was driven by Clark's daughter with Clark's consent. (Am. Compl. ¶ 14; *see also id.* ¶¶ 46–47). Seale further alleges "golf carts are dangerous instrumentalities under Florida Law" (*id.* ¶ 45), and it was reasonably foreseeable that Clark's failure to "perform his duty would lead to accidents such as the subject accident between . . . Clark's minor daughter and . . . Seale" (*id.* ¶ 48). Seale concludes, "Clark breached his duty of care to [Seale], in entrusting his 12-year-old minor daughter with the dangerous instrumentality without the proper training, instruction, or supervision." (*Id.* ¶ 50). The golf cart was loaned to Clark, and Clark ultimately supplied the golf cart to his daughter.

Moreover, Clark knew or should have known his daughter would use the cart in a manner involving unreasonable risk of physical harm to herself and others because of her youth and inexperience. *See supra*, Part III.A. ("With these two determinations — that the operation of golf carts generally, and specifically the operation of golf carts by children under the age of fourteen, carries certain inherent risks — in mind, and construing the complaint in the light most favorable to the plaintiff, *see Brooks*, 116 F.3d at 1369, the undersigned finds ORCA's act of issuing a license to a twelve-year-old child created a foreseeable zone of risk giving rise to a duty owed by ORCA to Seale . . . ."). Thus, Clark is subject to liability for the physical harm resulting from his daughter's use of the golf cart. *See Kitchen*, 697 So. 2d at 1202.

Clark argues "a parent who holds neither legal title nor an identifiable property interest in a motor vehicle should not be held vicariously liable for his or her child's negligent operation of the vehicle under the dangerous instrumentality doctrine.[4]" (Clark Mot. ¶ 8 (footnote added)

---

[4] Consistent with — although not identical to — the foreseeability of harm standard found in negligent entrustment is the dangerous instrumentality doctrine. "Under this doctrine, an owner who gives

14

(citing *Aurbach v. Gallina*, 753 So. 2d 60 (Fla. 2000))). Seale's claim against Clark is not premised on the dangerous instrumentality doctrine but rather on negligent entrustment. (*See* Am. Compl. ¶¶ 44–51). As part of his negligent entrustment claim Seale asserts golf carts are dangerous instrumentalities (*see id.* ¶ 45), but Seale's isolated mention of the doctrine does not transform the claim into one for vicarious liability under the dangerous instrumentality doctrine. Because liability in a negligent entrustment claim is not predicated upon ownership but upon foreseeability of harm, Clark's lack of ownership in the golf cart is immaterial and Clark remains liable for the resulting damages. *See Williams*, 568 So. 2d at 981. Although Clark was legally entitled to refuse the golf cart to his daughter — as Clark was the person Ocean Reef had loaned the golf cart to — he declined to do so. *See Weber*, 100 So. 3d at 731. Accordingly, Seale sufficiently states a claim for negligent entrustment against Clark.

### C. Clark's Rule 12(e) Motion

As an alternative to his Rule 12(b)(6) motion to dismiss the negligent entrustment claim, Clark contends the Amended Complaint includes conflicting allegations that Clark possessed the golf cart and "'either intend[ed] it for his daughter's use or fail[ed] to prevent her from using it subject to any restrictions he had for it,'" which requires a more definite statement pursuant to Rule 12(e). (Clark Mot. ¶ 5 (alterations in original) (quoting Compl. ¶ 49)). Clark further argues the Amended Complaint is "so vague that [he] cannot reasonably be required to frame a response." (*Id.* ¶ 7). Seale asserts Clark's Motion for a More Definite Statement is "a boilerplate recital of Rule 12(e) without anything more." (Clark Resp. 7).

---

authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated properly." *Hertz Corp. v. Jackson*, 617 So. 2d 1051, 1053 (Fla. 1993) (citations omitted). As mentioned, Florida has recognized golf carts as dangerous instrumentalities for almost thirty years. *See Meister*, 462 So. 2d at 1072–1073.

A Rule 12(e) Motion for a more definite statement "is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." *In re Reliance Fin. & Inv. Grp., Inc.*, 2006 WL 3663243, at *6 (citations and internal quotation marks omitted). A more definite statement is only "required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Id.* (alteration, citation, and internal quotation marks omitted). "As such, motions for more definite statement are rarely granted." *Id.* (citations omitted).

Clark provides little support for his request for a more definite statement, and the Court is not persuaded a more definite statement is warranted. In addition to the aforementioned allegation, the Amended Complaint further provides "Clark breached his duty of care to [Seale], in entrusting his 12-year-old minor daughter with the dangerous instrumentality without the proper training, instruction, or supervision." (Am. Compl. ¶ 50). These allegations, taken together, are neither unintelligible nor so vague and ambiguous that Clark cannot frame a response. This is not the rare case requiring a more definite statement.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUGED** as follows:

1. ORCA's Motion to Dismiss the Amended Complaint . . . **[ECF No. 31]** is **GRANTED in part**. Count III of the Amended Complaint [ECF No. 29] is dismissed. ORCA shall file an answer within the time provided in Federal Rule of Civil Procedure 12(a)(4)(A).

2. Clark's Motion to Dismiss Amended Complaint or for a More Definite Statement . . . **[ECF No. 38]** is **DENIED**. Clark shall file an answer within the time provided in Federal Rule of Civil Procedure 12(a)(4)(A).

Case No. 13-21515-CIV-ALTONAGA/Simonton

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of August, 2013.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record